In the Matter of the Estate of HERMAN K. ENDEMANN, Deceased. STATE TAX COMMISSION, Appellant and Respondent; SARAH H. ENDEMANN, as Executrix of HERMAN K. ENDEMANN, Deceased, Respondent and Appellant.

Argued April 7, 1954; decided May 27, 1954.

*Mortimer M. Kassell* and *Miriam Wernick* for appellant-respondent. I. Decedent's election to receive a reduced retirement allowance and an annuity for his widow constituted a "transfer intended" to take effect at his death. (*Roddy* v. *Valentine,* 268 N. Y. 228; *Rees* v. *Teachers' Retirement Bd.,* 247 N. Y. 372; *People ex rel. Fitzpatrick* v. *Greene,* 181 N. Y. 308; *Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208; *Hoyt* v. *County of Broome,* 285 N. Y. 402; *Schieffelin* v. *Berry,* 127 Misc. 178, 217 App. Div. 451, 243 N. Y. 603; *Matter of Mearkle* v. *Commissioner of Internal Revenue,* 129 F. 2d 386; *Commissioner of Internal Revenue* v. *Clise,* 122 F. 2d 998, 315 U. S. 821; *Commissioner of Internal Revenue* v. *Wilder,* 118 F. 2d 281, 314 U. S. 634; *Matter of Harbord,* 201 Misc. 358, 279 App. Div. 914, 305 N. Y. 622.) II. The annuity should be valued at $8,572 as required by section 249-v of the Tax Law. (*Liebmann* v. *Hassett,* 148 F. 2d 247; *Igleheart* v. *Commissioner of Internal Revenue,* 77 F. 2d 704; *Hagy* v. *Kelly,* 135 N. J. Eq. 436.) III. The New York Constitution does not prohibit the inclusion of the annuity in decedent's gross estate. (*Chase Nat. Bank* v. *United States,* 278 U. S. 327; *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283; *New York Trust Co.* v. *Eisner,* 256 U. S. 345; *United States Trust Co.* v. *Helvering,* 307 U. S. 57; *Matter of Plummer,* 30 Misc. 19, 47 App. Div. 625, 161 N. Y. 631; *Plummer* v. *Coler,* 178 U. S. 115; *Black* v. *Graves,* 257 App. Div. 176, 281 N. Y. 792.)

*Carleton H. Endemann* for respondent-appellant. I. The court below erred in holding that decedent's selection of option 3 was a transfer intended to take effect at death within subdivision 3 of section 249-r of the Tax Law. (*Hetherington* v. *O'Dwyer,* 272 App. Div. 919; *Marks* v. *La Guardia,* 262 App. Div. 709, 286 N. Y. 625.) II. Decedent's exercise of the privilege permitted by the statute was not a "transfer" of "property". (*Dimock* v. *Corwin,* 19 F. Supp. 56, 99 F. 2d 799, 306 U. S. 363; *Brown* v. *Routzahn,* 63 F. 2d 914, 290 U. S. 641; *Commissioner of Internal Revenue* v. *Pierce,* 146 F. 2d 388; *Higgs' Estate* v. *Commissioner of Internal Revenue,* 184 F. 2d 427; *Commissioner of Internal Revenue* v. *Twogood's Estate,* 194 F. 2d 627.) III. Assuming, *arguendo,* decedent transferred a

property interest, there was no transfer within subdivision 3 of section 249-r of the Tax Law because decedent failed to retain any interest in the transferred property. (*Matter of Harbord,* 201 Misc. 358, 279 App. Div. 914, 305 N. Y. 622; *Matter of Vanderbilt,* 281 N. Y. 297; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339; *Matter of Seaich,* 136 Misc. 201; *Matter of Stewart,* 138 Misc. 866, 235 App. Div. 772.) IV. Since there are no express words requiring the estate taxation of pensions, rules of statutory construction, the equitable considerations and public policy involved should persuade this court to hold that selection of option 3 was not a taxable transfer. (*Howitt* v. *Street & Smith Publications,* 276 N. Y. 345; *Matter of Cohen,* 270 N. Y. 383; *Matter of Terry,* 218 N. Y. 218; *United States* v. *Supplee-Biddle Hardware Co.,* 265 U. S. 189.) V. Assuming, *arguendo,* a taxable transfer, the court below correctly held a survivorship annuity and not a single life annuity was transferred. It erred in valuing such annuity as it did and instead should have remitted it to the appraiser for revaluation. VI. The court below erred in holding that section 5 of article XVI of the New York Constitution does not prohibit the imposition of an estate tax on the widow's pension. VII. The court below erred in holding that section 7 of article V of the New York Constitution does not prohibit imposition of an estate tax on the widow's pension. (*Cashman* v. *Teachers' Retirement Bd.,* 193 Misc. 57, 275 App. Div. 908, 301 N. Y. 501.)

DESMOND, J. In this appraisal proceeding under the New York estate tax law, both the executrix and the State Tax Commission appeal here from a nonunanimous modification, by the Appellate Division, of the Surrogate's taxing order. The deceased, Herman K. Endemann, who died on November 4, 1947, had been, until his retirement on October 1, 1936, in the employ of New York City and a member of the city's employees' retirement system. On his retirement, Endemann (who, if he had not selected an " Option ", would have been entitled to an annual retirement allowance for his own life of $3,747.69) had, pursuant to the statute which is now section B3-46.0 of the New York City Administrative Code, made an irrevocable election of " Option 3 " of the available retirement benefits, which option provided him (then sixty-four years old) with an annual retirement allow-

ance for his life of $3,140.60, and, for his wife (then sixty-two years old), provided after his death, an annuity of $1,570.20. At the time of Endemann's retirement there was in existence, or set up, for Endemann in the city's retirement system funds, an "initial reserve" of $34,183.04, made up of his own accumulated contributions, with interest, of $5,373.36, plus the city's contributions of $28,809.68, or $34,183.04 total. That "initial reserve" (and this becomes important later on) was the amount allocated, as a bookkeeping matter, for a reserve as against the payments the system was obligated to make to Endemann, and later to his wife if she should survive him. The total payments actually to be made might, of course, turn out to be much higher, or much lower.

When decedent died, his executrix filed a New York estate tax report in which she valued the retirement benefits at "0". The appraiser, however, and the Surrogate in his *pro forma* taxing order, included in the gross estate for tax purposes, as a transfer taking effect at decedent's death, the widow's annuity from the retirement system, valuing it at $8,572 in accordance with a certificate of valuation thereof made by the Superintendent of Insurance for the tax appraiser, under section 249-v of the Tax Law. That $8,572 represented, according to the appropriate tables, the calculated present value as of decedent's death, of a life annuity to the widow, then seventy-three years old, of $1,570.20 per year. It is not disputed that $8,572 is the mathematically correct figure, if it was correct to value this annuity by that "present value as of death of a future annual payment" method. However, as we shall see, the Appellate Division majority held (incorrectly, we hold) that the value of the widow's annuity, both at the time of its creation (decedent's retirement) and at the time of decedent's death, was the same: $5,514.44. As pointed out above, the "initial reserve" for decedent's retirement payments was, at his retirement, $34,183.04; he elected to take for himself an annual retirement allowance of $3,140.60; since, reasoned the Appellate Division, the initial reserve of $34,183.04 would have produced a single life annuity for Endemann of $3,747.69 and did produce, as optioned, an annuity for him of $3,140.60 and a survivor's annuity of $1,570.20, the value or cost of Endemann's optioned annuity was

314060/374769 of $34,183.04, or $28,668.60, as computed by the Appellate Division, and the balance is the cost or value of the widow's survivorship annuity, according to the Appellate Division majority. We agree with the Tax Commission and with the Presiding Justice's dissent that this method of valuation is incorrect, and that the appraiser was right in using the Insurance Superintendent's certified value for the wife's annuity. Both counsel, on this appeal, although differing as to which is the proper method, agree that the Appellate Division's valuation theory was erroneous.

Because the *pro forma* order had included this annuity in the tax estate at $8,572, the executrix appealed therefrom to the Surrogate, who modified the *pro forma* order by excluding therefrom any value for the widow's annuity. The Surrogate wrote two opinions in which he held in substance that the annuity was not taxable at all because of section 5 of article XVI of the State Constitution, which is as follows: " All salaries, wages and other compensation, except pensions, paid to officers and employees of the state and its subdivisions and agencies shall be subject to taxation ". The Surrogate agreed with the appraiser that the selection by the testator of option 3 (giving his wife an annuity after his death) was, under subdivision 3 of section 249-r of the Tax Law, " a transfer  *  *  * intended to take effect in possession or enjoyment at or after his death ", and as to this all the Appellate Division Justices agreed, except one dissenter whose view was that " at the time of his death decedent had no property in this fund and that he had at no time made a transfer of any interest in the fund ". In other words, the Surrogate held that this was an otherwise taxable to-take-effect-at-death transfer, but that the State Constitution forbade its taxation since it was a " pension ". Four of the Appellate Division Justices held that the Constitution had no such meaning or effect and that the annuity was taxable, but one of those four upheld the appraiser's method of valuation, and the three other Justices used a different kind of mathematics. The other dissenting Justice, at the Appellate Division, saw no unconstitutionality in the taxing, but thought that there was no transfer to the wife by decedent, effective at his death.

So we have three questions:

1. Does the State Constitution forbid taxing this annuity? (We answer: " no ".)

2. Did decedent's choice of option 3 constitute a transfer to his wife intended to take effect at his death? (We answer: " yes ".)

3. Did the Appellate Division majority, or the appraiser, use the correct method of valuing the widow's annuity? (We answer: " the appraiser ".)

First, as to the constitutional question: when the 1938 Constitutional Convention enacted section 5 of article XVI (*supra*), making subject to taxation " all salaries, wages and other compensation, except pensions, paid to officers and employees ", it was putting into the Constitution the already existing statutory law that public officers and employees, like everyone else, had to pay taxes on their earnings, that is, income tax. This is clearly shown by the excerpts from the convention journal (II New York State Constitutional Convention of 1938, Revised Record, pp. 1119, 1120) quoted by the Surrogate. As originally introduced, the new constitutional provision referred to " Salaries, wages and other compensation " but the word " pensions " was added, out of caution, to make sure that it could not be construed to make " pensions " subject to income tax (" pensions " were already exempt therefrom by section 70 of the Civil Service Law, but the word " pensions " was put into the Constitution, we assume, to make clear that this exemption was not being abolished). Retirement benefits were originally exempt from estate taxes but this exemption was, apparently, abolished by section 249-kk in 1930 (and the abolition confirmed and continued in 1947 by an amendment to section 91 of the Civil Service Law). Thus, when section 7 of article V of the State Constitution was adopted in 1938, to make retirement system membership and benefits contractual, these annuities were already subject to estate taxes.

The next question is as to whether decedent, when he chose option 3, made to his wife " a transfer * * * intended to take effect in possession or enjoyment at or after his death " (Tax Law, § 249-r, subd. 3). The Surrogate wrote a convincing analysis of this problem. He pointed out that while, during

his life, Endemann was required to contribute to the retirement system and could not dispose of his interest therein, he, nevertheless, at time of retirement, had enforcible and valuable rights as against the system. He could demand a retirement allowance for himself alone, or a retirement allowance for himself with additional payments to go at his death to others. We agree with both courts below that " It is difficult to understand how the selection of option 3 by the testator was not a ' transfer ' of a portion of his property rights in the reserve funds " (201 Misc. 1080). Endemann could have decided to use up his rights by electing a $3,747.69 retirement allowance for himself, but, instead, he accepted for his life a lesser retirement allowance of $3,140.60, plus an agreement by the system to pay his widow $1,570.20 per year after his death, should she survive. He, in fact and effect, then and there created an annuity for her, to take effect at his death. We do not concur in the idea that the transfer was complete when Endemann chose option 3 and that nothing took effect at Endemann's death. Mrs. Endemann could not enjoy the annuity until her husband died, and, since she might have died first, there was no certainty that her annuity would ever actually have an existence (see *Commissioner of Internal Revenue* v. *Clise,* 122 F. 2d 998, certiorari denied 315 U. S. 821, involving an annuity purchased from an insurance company, which is the nearest analogy possible). Endemann had " bought " this annuity, as he had " bought " his pension rights, by service to the city. The recent Federal cases cited by the executrix here (*Higgs' Estate* v. *Commissioner of Internal Revenue,* 184 F. 2d 427, and *Commissioner of Internal Revenue* v. *Twogood's Estate,* 194 F. 2d 627) are not in point — they say that such annuities are not subject to Federal estate taxes, but this because of a 1949 Federal statutory change which makes such transfers prior to a certain date nontaxable unless the transferor retained an interest — New York State enacted a somewhat similar statute (L. 1950, ch. 683) but its exemption was as to transfers made by decedent dying on or after May 1, 1950, not including this Endemann estate (see *Matter of Harbord,* 305 N. Y. 622).

We do not agree with the executrix, here, that what Endemann did, at retirement, was merely to " renounce " part of his retire-

ment rights in favor of his wife, like a legatee renouncing a legacy (see *Brown* v. *Routzahn,* 63 F. 2d 914, certiorari denied 290 U. S. 641). Here, Endemann had built up for himself, by contributions of money and services, a fund which, at retirement, he had a contractual right to dispose of in any one of several ways — he chose a way which involved a transfer to his wife, effective at his death.

Both counsel here are in agreement that this is a so-called " joint and survivorship annuity " and that such an annuity would be included in a tax estate, if purchased from an insurance company. (If, however, decedent had bought, not a joint annuity but an annuity for his wife only, that would have been a present completed gift, apparently not subject to estate tax.) It seems to us that decedent here did, in effect, purchase a joint and survivorship annuity, out of his retirement funds, when he chose the option. His executrix argues against that concept, telling us that the reason a commercially purchased joint and survivorship annuity is taxable under estate tax statutes is that, by purchasing it, decedent, during his lifetime, depletes his funds which otherwise would have been part of his estate at his death, theoretically. There is at least one answer to that: this testator did, by electing this type of annuity, reduce his own annual retirement allowance from $3,747.69 to $3,140.60, or $600 per year for the rest of his life, and thus suffered the same sort of theoretical estate depletion, but on an installment basis.

Our third, and last, question is as to the correct method of valuing the property right which came to the widow at death. The appraiser accepted the Insurance Superintendent's valuation (made pursuant to Tax Law, § 249-v, which says it is " conclusive "). At decedent's death the appropriate tables showed that the present value of $1 per year for the life of a person aged seventy-three (like this widow) was $5.45928, which, multiplied by the $1,570.20 annuity, made a value of $8,572. The Appellate Division, however, said that the Superintendent's computation should not be used since the evidence showed the " actual value of the asset ". By that, the court meant that since decedent had an " initial reserve " in the system of $34,183.04, and took for himself a retirement allowance of $3,140.60 to which $28,668.60 of that reserve was proportionately applied, the

balance in the reserve of $5,514.44 was the "value" of the annuity Endemann arranged for his wife — the value both at the time of his retirement and at the time of his death. But, even if we assume that the $5,514.44 was in fact the "value" at his retirement, of a $1,570.20 annuity payable to his widow at death, that value is still not the one to be taxed; it is the value at his death. The Appellate Division thought the value at both times would be the same. That, we submit, is impossible, since if the wife had predeceased her husband, the at-death value would have been zero. The value, at the time of the gift, of the gift of an annuity to begin at the donor's death, cannot be the same as the value of that annuity to the beneficiary at the later time when payments begin. Endemann retired in 1936, died in 1947. Suppose he had died in 1937, when his widow was sixty-three instead of seventy-three (her age when he actually died)? Would not the property right which she would have begun to enjoy at sixty-three have been more valuable than it was when she did begin to enjoy it at the age of seventy-three?

Further evidence of the error in the Appellate Division's formula is found in this: the executrix says that if, as held by the Appellate Division, the value of the annuity was, at retirement date, $5,514.44, then it must have been worth less at death since her right, when her husband was eleven years younger, to an annuity was worth more than when she received it, eleven years later when she was eleven years older. We must do what section 249-v of the Tax Law mandates, and take the Insurance Superintendent's calculated value of the annuity at the date of decedent's death.

Of course, this executrix is not much concerned about the method of valuation since, at the highest figure suggested, that is, the appraiser's $8,572, the New York State estate tax here involved would be only $85.72. However, the question may be important in other cases. Both sides agree that the Appellate Division's valuation method is incorrect since it assumes that a certain proportion of the initial reserve was the correctly calculated value of Mrs. Endemann's annuity, and there is no proof that the reserve was so calculated. The comparatively simple position of the State Tax Commission on this valuation question is: that, included in Endemann's tax estate when he

died, was a transfer made at his retirement and taking effect at his death of this annuity to his wife, that the value of the transferred property for such purposes can only be its value when the wife took it, and that the method of calculating this value is set forth in, and is mandated by, section 249-v of the Tax Law. The executrix, insofar as she argues this valuation question as such, says this : that, while what Endemann did at his retirement resulted in a joint and survivorship annuity, the most that he transferred to his widow, and the thing that passed to Mrs. Endemann at his death, was '' a survivorship annuity ''. The executrix says that what the appraiser should have done, assuming it was correct to tax this transfer at all, was to value, as of just before Endemann's death by the appropriate table, the then value of Mrs. Endemann's survivorship annuity rights which, of course, would be calculated on the basis of Endemann's then age and her then age. The executrix says, although it is not in the record, that this would result in a valuation of about $3,300 and says that it is absurd to say that such an annuity worth $3,300 the day before Endemann's death would be worth $5,514.44 or $8,572 the next day. The answer to that is, we think, that all such valuations of prospective future interests must be made on the basis of pure formulae.

The executrix says that this taxation is somehow invalidated by section 7 of article V of the State Constitution which says that, after July 1, 1940, '' membership in any pension or retirement system of the state or of a civil subdivision thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired ''. The argument of the executrix in this connection is that retirement benefits are here being impaired by the State because the avails thereof are being diminished by taxation. The executrix ascribes too much meaning to section 7 of article V. The New York estate tax, as applied to tax this annuity, was in effect long before 1940.

The order appealed from should be modified in accordance with this opinion, and, as so modified, affirmed, without costs.

LEWIS, Ch. J., CONWAY, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Ordered accordingly.