## Eastlack Estate

*Charles Morris Hamilton*, for appellant.

*Irvin Stander*, Special Assistant Attorney General, for appellee.

SHOYER, J., April 3, 1959.—This appeal is from the appraisement for inheritance tax of decedent's interest in the Edgcomb Steel Company's "Profit Sharing Trust", which, following decedent's death, was

paid in lump sum to his designated beneficiary, his daughter.

The material facts are recited in the petition and answer sur the appeal, and in a stipulation of counsel, and are not in dispute.

For 21 years prior to his resignation on January 8, 1954, decedent had been an employe of the Edgcomb Steel Company. On December 30, 1942, the employer established a "Profit Sharing Trust" with Fidelity-Philadelphia Trust Company as trustee, effective as of January 1, 1942, for the benefit of its eligible employes. Eastlack was at the time one of the eligible employes and continued as a participant in the plan until his death. At the time of his resignation the sum of $6,-744.29 was allocated to Eastlack's separate account in the trust. After he retired the trustee paid Eastlack the sum of $1,348.85, being one-fifth of his share in the trust, and agreed to pay him the balance in four equal annual installments under paragraph eighth (c). Following his death on June 25, 1954, the $5,395.44 remaining in Eastlack's separate allocated account in the trust was paid in lump sum to his daughter pursuant to his written designation dated December 28, 1953.

An inheritance tax appraisement was filed on December 10, 1954, in which, inter alia, the register of wills assessed a tax in the sum of $107.91, being at the rate of two percent on the sum of $5,395.44, proceeds of the Edgcomb Steel Company Profit Sharing Trust.

The Edgcomb Steel Company's Profit Sharing Trust was established by the employer for the benefit of those of its employes having three or more years of continuous service. The employer agreed to contribute to the trust annually a stated percentage of its net profits which were to be allocated by the trustee proportionately to the separate accounts of each participating

employe based on a ratio of one point for each $100 of annual earnings of the employe and one point for each year of service. The assets comprising the trust are invested by the trustee, reappraised annually and the profits and losses are allocated proportionately by the trustee to the separate account of each participant.

In the event of total disability, death, resignation or discharge of an employe after five years participation in the fund, or upon retirement at age 65 with 10 years of participation in the fund, the entire sum allocated to the separate account of the participant is payable to him, or, in the event of his death, to his designated beneficiary or, if none is designated, to his estate; the payments being made either in lump sum, in equal annual installments over two, five, ten or more years, or by purchase of an annuity, at the discretion of an administrative committee appointed by the employer. The mode of payment in the event of resignation, as in the instant case, is fixed at not less than five equal annual installments.

The employe's allocated share of the assets is expressly exempt from attachment, sequestration, etc., and is not subject to alienation or assignment by any beneficiary or participant.

The employer agreed not to amend the trust in any manner that might revest any part of the res in the employer, or that might divest any participant of his share in the trust.

The tax was assessed by the Commonwealth under the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301 et seq., which in pertinent part provides:

"A tax . . . is . . . imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . .

"(c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after such death.

"(d) . . . Provided, That property transferred pursuant to powers of appointment shall, . . . be taxed as of the estate of the donor . . ."

Appellant here contends, as the taxpayers successfully did in Enbody and Burke Estates, 85 D. & C. 49 (1953), that decedent had no right of *ownership* in the pension fund trust or in the payments made therefrom to his designated beneficiary after his death, that decedent never had possession, enjoyment or dominion over those funds, he could not withdraw his allocated share from the trust, he had no power to anticipate or assign his interest nor was it subject to the payment of his debts.

The Commonwealth, on the other hand, contends that the terms of the instant profit sharing trust and the property rights of the participants therein are materially different from the employe's rights in the pension trusts involved in the Enbody and Burke Estates, and that in so far as the employe's property rights are concerned, the instant case is controlled by Bayer's Estate, 345 Pa. 308 (1942), and by Dorsey Estate, 366 Pa. 557 (1951), the latter involving the Sears, Roebuck Profit Sharing Trust, a leading case which has been cited with approval and followed in other jurisdictions: Estate of E. L. Daniel, 93 Ohio App. 123, aff'd. 159 Ohio 109 (1952); Brackett Estate, 342 Mich. 195; Garos v. State Tax Commission, 99 N. H. 319, 109 A. 2d 844 (1954); also Matter of Endemann, 307 N. Y. 100.

In determining the applicability of the Pennsylvania inheritance tax statute, it is well at the outset to consider the appellation of the fund as given it by

the parties, viz., a "profit sharing trust". A court of equity of course will look behind a name to the substance. The hearing judge has done that and his examination of the parties' formal agreement convinces him that the plan is well named, for while it does embrace some pension features, an employe does not have to await retirement but may reap substantial benefits after a mere four years of employment. As stated in the preamble, the corporation established the trust to "create in its employees a finer esprit de corps, a greater interest in and loyalty to Corporation and its business."

By way of contrast it should be noted that in the Burke and Enbody cases the trust instruments there involved were employers' *pension trusts* for the benefit of *retired employes*, with insurance features providing for periodic payments during the *lifetime* of the retired employe, with a guaranteed minimum which, in the event of the premature death of the *insured* employe, was payable to a designated beneficiary. Nothing was payable to an employe who resigned prior to reaching retirement age. The Burke and Enbody cases more nearly approximate insurance contracts, the proceeds of which when payable to a named beneficiary are expressly exempt from tax under the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 1 (*d*), 72 PS §2301 (*d*), as amended by Act of March 28, 1929, P. L. 118.

Even without the statutory exemption the judicial ratiocination which excluded the proceeds of life insurance policies or beneficial funds from inheritance taxation was that such funds "never formed part of the estate of the decedent and therefore did not 'pass from' that estate but directly from the assets of the insurance company": Dorsey Estate, supra, page 562. See also Housekeeper's Estate, 10 D. & C. 494, 497 (Stearne, J., 1928).

The profits earned on the investments in the Burke and Enbody Trusts and the losses suffered did not inure to the benefit of or cut down the interest of the participants in those plans. Such profits or losses merely affected the actuarial soundness of the self-funded obligations that were there involved. The participating employe in Burke and Enbody (except for the supplemental fund of the Curtis Pension in the Burke case, which was not in issue), had no separate interest in the trust res, any more than an insured has in the general assets of a life insurance company.

Spendthrift provisions are limitations on property rights that are intended to protect one from his own improvidence and to save a trustee from vexatious claimants. Such provisions do not of themselves preclude the taxation of transmissible property interests otherwise taxable: Bayer's Estate, supra; Dorsey Estate, supra; Todd Trust, 358 Pa. 530 (1948); Hoelzel Estate, 101 Pitts. L. J. 77. See also Daniel's Estate, supra.

In the Daniel case, 93 Ohio App. 126, the Ohio Court sustained the tax imposed under the Ohio statute and stated:

"The Court views the above quoted provisions simply as a spendthrift provision designated to protect the purpose of the trust and not inconsistent with ownership by the participant . . . and effective merely to postpone the participant's right to assume all the incidents of ownership which would accrue at age 65, including possession and control of the accumulated proceeds or an absolute right thereto, *subject to the payment terms of the trust agreement.*" (Italics supplied.)

The spendthrift provision in the instant trust imposed a restriction on the beneficiary's absolute enjoyment of *his* property and thus affected its *value* but not the ownership of the interest.

Likewise the prohibition against assignment restricted the employe's control and dominion over his portion of the assets of the trust, but since he could obtain his portion in full by resigning his employment at any time after eight years, absolute ownership did actually vest in him. The owner of a life insurance policy, or other contract, which by its terms prohibits assignment, is no less the owner of the contract in spite of such provision. True, upon the employe's discharge for cause such as dishonesty, misconduct or insubordination, the administrative committee is empowered to forfeit his portion and divide the same among the other employes, but this is not such a hazard as would preclude his full ownership. Good conduct being the rule and not the exception, it cannot be set up as a condition precedent to ownership. Rather is the forfeiture of the employe's portion the extreme penalty to be exacted for his misbehavior.

Whether the company's contribution or "payment" to the trust is considered to be in the nature of deferred compensation or a bonus, it is allocated to the separate account of each employe-member at the end of his year of service in the ratio of his annual earning from the company to the total earnings of all the participants. The profits and losses arising from the investments of the trust res are computed annually by the trustee and are allocated proportionately to the separate accounts of the participants.

Paragraph fifth of the trust provides that upon resignation after five years participation "such employee shall be entitled to receive from the Trustee, such portion of the assets of the Trust, allocated to said employee . . ."

Eastlack, having been employed by the company for 21 years, determined to resign. He resigned under paragraph fifth. His right to that portion of the trust fund previously allocated to him was full and complete

both as to amount and incidents of ownership. Presumably Eastlack could have "retired" under the provisions of paragraph seventh, because the stipulation of the parties and appellant's brief both speak of "retiring". The trust agreement uses this expression only in connection with "retirement on account of age". Aside from the fact that then the administrative committee pursuant to eighth (*a*), (*b*) or (*d*) might have paid out Eastlack's share in a lump sum, or in equal installments over a period not exceeding 10 years, or even purchased for Eastlack an annuity contract, there is no difference in the actual result. Payment having been directed under paragraph eighth (*c*), Eastlack received exactly what he might have received on retirement under paragraph seventh, and the exact equivalent of any one of the above mentioned variants provided for retirement under the latter paragraph.

As was stated by the Supreme Court in Dorsey Estate, supra, pages 561, 562:

". . . he was entitled to receive all the moneys and securities then standing to the credit of his account in the fund, to be paid in installments over a five year period or, at the option of the trustees, in the form of a single premium annuity contract, the latter being presumably for the purpose, in appropriate cases, of protecting him against his own recklessness or improvidence in the expenditure of the property so withdrawn by him. The fact that the trustee thus had some discretionary power to determine the mode of payment at the time of the employee's withdrawal or in the event of his death in nowise limited his absolute right to withdraw his share of the property in the fund or dispose of it at his death. . . . It is not necessary to consider whether they [the Company's contributions] are to be regarded, realistically, as additional compensation for the services rendered by the employe or

as constituting a pure gift on the part of the company, since, *in view of the depositor's right to withdraw in his lifetime the total amount of the fund credited to him or to make full disposal of it at the time of his death, he had, in any event, substantial ownership of his entire share of the fund and accordingly, in transferring it to the beneficiary he was transferring . . . his proportionate share of the Company's contributions. . . ."* (Italics supplied.)

The above quoted statement of the law must control the decision of this case in spite of the fact that Eastlack, unlike Dorsey, could not obtain the enjoyment of his portion without resigning his employment in addition to withdrawing from the fund

In Bayer's Estate, supra, involving single premium refund annuity contracts, the insurance company agreed to pay to Bayer, "the annuitant", $100 monthly during his lifetime, the payments to terminate with the last payment prior to his death, except that if the total payments made to him should be less than his single premium, the company would exhaust the full amount of the premium by payments to his beneficiary, the annuitant retaining the right to change the beneficiary, but in the absence of a beneficiary the difference would be paid to the annuitant's estate.

Mr. Justice Linn stated, page 311:

"The taxable event was the transfer at Bayer's death, because, until that moment, he had the right to designate the transferee. The subject taxed was the interest in the contract intended by him then to take effect in possession or enjoyment, i.e., the company's obligation to repay any remaining balance of the amount received as the single premium."

Mr. Justice Linn's opinion notes that the proceeds of annuity contracts are by statute expressly exempt from liability to the beneficiary's creditors.

In Cameron Estate, 15 D. & C. 2d 557 (1958), the Allegheny County Orphans' Court held that the proceeds payable to a deceased employe's widow under a deferred compensation agreement with the employer were subject to the inheritance tax. The court stated, page 560:

"This deferred compensation is actually money due Mr. Cameron . . . The payment of these amounts was merely deferred by the company until termination of Mr. Cameron's employment with the company 'whether by death or otherwise,' at which time the payments are mandatory . . ."

And at page 562:

"The contract may be looked upon as an 'annuity', spread out over a 10 year period, payable in equal monthly installments over that fixed period. By the contract Alcoa has firmly bound itself to pay Cameron, after termination of his employment by death or otherwise, an amount readily determinable, during each year of a 10 year period, in monthly installments, and in the event of his death prior to or during the 10 year period, then to pay said payments to his widow, as beneficiary, and at her death, the balance to his executor or administrator. In such case Alcoa, instead of buying an annuity policy for its employe or a group annuity policy for its employes, saw fit to act as its own self-insurer, with the same effect as if an annuity policy had been purchased."

It was stated in Glosser Trust, 355 Pa. 210, at page 215, and reiterated in Todd Trust, 358 Pa. 530, at page 534:

"The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor, but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime."

Clearly, Eastlack was the absolute owner of the separate trust fund which was an integral part of Edgcomb Steel Company's profit sharing trust. Until the moment of Eastlack's death he retained the absolute right to designate whomever he chose to be the beneficiary of the balance of this fund. The transfer by him to his beneficiary was intended to take effect in possession or enjoyment only at and after his death. Such transfer is subject to the inheritance tax imposed by the Act of 1919, supra, as amended.

The appeal from the inheritance tax assessment is dismissed, and the record is remitted to the register of wills; each party to bear its own costs.