Dorsey Estate.

Argued January 4, 1951. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

558

*Joseph F. McVeigh,* with him *Cornelius C. O'Brien,* for appellant.

*Francis J. Gafford,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Irving N. Kieff,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 19, 1951:

Where the share of an employe in a Savings and Profit Sharing Pension Fund composed of contributions from the wages or salaries of employes and contributions from the profits of the employer was paid at the time of his death to a beneficiary he had designated, was the portion of it which represented the employer's contributions subject to transfer inheritance tax under the Act of June 20, 1919, P. L. 521, as amended? That is the question presented on this appeal.

The pension fund here involved is a trust established by Sears, Roebuck & Company for its employes. Decedent, Harry J. Dorsey, an employe, became a member of it in 1924 and subsequently named his sister, Eleanor A. Dorsey, as the person who was to receive the proceeds payable therefrom in the event of his death. Under the rules and regulations governing its administration and operation an employe is required to deposit 5% of his compensation up to a maximum per annum of $250; the Company contributes

annually a certain graded percentage of its consolidated net income. The fund is administered by trustees with whom all the contributions are deposited. The Company's contributions are credited to the accounts of the depositors in accordance with age and length of service, the largest proportionate share being allotted to those in the so-called "Group D", which consists of employes over 50 years of age and having 15 or more years' continuous service. At the time of his death in 1945 decedent was in "Group D". The total credits to his account in the fund at the time of his death included 932 shares of stock of the Company of a value of $35,183, all of which shares had been contributed by the Company, and the sum of $3,939.29 representing contributions made by decedent from his salary. Transfer inheritance tax was paid on the latter amount at the rate of 10%. The Register of Wills assessed also a 10% tax on the value of the shares of stock, or $3,518.30, from which assessment Eleanor A. Dorsey appealed. The court below decided that the tax was properly imposed, and from that decision she now appeals to this Court.

Section 1(c) of the Act provides that the tax shall be imposed upon the transfer of any property made by a resident by deed, grant or gift intended to take effect in possession or enjoyment at or after the death of the grantor or donor. Section 1(d) provides that where property is transferred pursuant to a power of appointment it shall be taxed as of the estate of the donor, notwithstanding any blending of such property with the property of the donee. It is the contention of appellant that in designating her as beneficiary decedent was merely exercising a power of appointment over that portion of the share of the fund credited to him which represented contributions by the Company. Such a contention would be valid only if the Com-

pany's contributions continued to be owned by the Company and not by decedent, because obviously a power of appointment can exist only with reference to another's property and not one's own. But it seems quite clear that decedent's share of the fund belonged to him in its entirety during his lifetime and without any distinction as to the part thereof contributed out of his salary and the part contributed by the Company. The rules and regulations governing the fund state its purposes to be, inter alia, to permit the employes *to share in the Company's profits* and to provide a plan through which each employe may accumulate his own savings *and his portion of the Company's contributions* as a means of providing an income for himself on retirement. These declarations fairly indicate that the Company regarded its contributions as the property of the depositors during the period of their accumulation in the fund. It was evidently so understood by decedent himself, for in his will he stated: "I am presently the owner of certain shares of the Profit Sharing Plan of Sears, Roebuck & Co., a corporation, as well as a certain cash balance held by said Sears, Roebuck & Co. in connection with the operation of said Profit Sharing Plan." The rules and regulations provide that, so far as practicable and advisable, the fund should be invested in the capital stock of the Company, to the end that the depositors may, in the largest measure possible, *share in the earnings of the Company.* There stood to the credit of each depositor's account in the fund a share made up not only of his own contributions but also those of the Company; in other words, the Company's contributions were apportioned as a credit to each depositor. A depositor, after completing five years of service, was entitled, upon ceasing to be a member of the fund, to withdraw *all* moneys and securities credited to his account at that time, and

upon the death of a depositor, regardless of length of service, his estate or his designated beneficiary was entitled to receive *all* moneys and securities then credited to his account. Payment of the moneys and securities could be made by the trustees wholly or partially in kind or in cash or by the purchase and delivery of a single premium annuity contract. A "Group D" depositor was entitled to withdraw from the fund even without leaving his employment and prior to attaining the age of retirement, and he could also withdraw upon the termination of his employment after attaining the age of retirement, and in either event he was entitled to receive *all* the moneys and securities then standing to the credit of his account in the fund, to be paid in instalments over a five years' period or, at the option of the trustees, in the form of a single premium annuity contract, the latter being presumably for the purpose, in appropriate cases, of protecting him against his own recklessness or improvidence in the expenditure of the property so withdrawn by him. The fact that the trustees thus had some discretionary power to determine the mode of payment at the time of the employe's withdrawal or in the event of his death in nowise limited his absolute right to withdraw his share of the property in the fund or to dispose of it at his death, but governed only the form in which he or his designated beneficiary or his estate would receive it. Once the Company's contributions became part of the fund they could never thereafter revert to the Company; it is not necessary to consider whether they are to be regarded, realistically, as additional compensation for the services rendered by the employe or as constituting a pure gift on the part of the Company, since, in view of the depositor's right to withdraw in his lifetime the total amount of the fund credited to him or to make full disposal of it at the time of his

death, he had, in any event, substantial ownership of his entire share of the fund and accordingly, in transferring it to the beneficiary designated by him he was transferring not only *his own property* to the extent that it represented contributions from his salary, but also *his own property* to the extent that it represented his proportionate share of the Company's contributions, and therefore he was not in anywise acting merely as the donee of a power of appointment. For the same reason the designation of the beneficiary under the facts of the present case is not analogous to the designation of a beneficiary in a life insurance policy. The funds payable by an insurance company to the beneficiary of a life insurance policy never formed part of the estate of the decedent and therefore did not "pass from" that estate but directly from the assets of the insurance company (cf. *Housekeeper's Estate,* 10 D. & C. 494, 497) whereas, here, as previously pointed out, the property involved did form part of decedent's estate in his lifetime and passed to the beneficiary, not from the employer-Company but from decedent's estate.

Appellant urges that, even in the face of such a conclusion, the inheritance tax here in controversy should not be imposed because the right of decedent to withdraw the fund in his lifetime was equivalent to a right of revocation, which, unexercised, did not render the property transferred subject to the tax, citing *Dolan's Estate,* 279 Pa. 582, 124 A. 176. The Commonwealth contends that the decision in *Dolan's Estate* has been in effect overruled by pronouncements in subsequent opinions of this Court.* Be that as it

---

* *Commonwealth v. Linderman's Estate,* 340 Pa. 289, 17 A. 2d 397; *Glosser Trust,* 355 Pa. 210, 215, 49 A. 2d 401, 404; *Todd Trust,* 358 Pa. 530, 534, 58 A. 2d 135, 136, 137; *Myers Estate,* 359 Pa. 577, 581, 60 A. 2d 50, 52.

may, however, the decision in *Dolan's Estate* is not here in point, since the Commonwealth is not basing its claim on the fact that there was here what amounted to a reserved right of revocation, but on the fact that the transfer to decedent's beneficiary was intended to take effect in possession or enjoyment only at and after his death. In *Dolan's Estate,* the donor, by deed of conveyance completely divested herself of all right, title, interest, possession and enjoyment of, in and to the property, subject only to her reserved right of revocation, whereas in the present instance decedent did not in his lifetime make any transfer to his named beneficiary of either title or enjoyment or possession, but merely designated her as the person to receive the title, enjoyment and possession at the time of his death; in other words, in *Dolan's Estate* the transfer of the property took place during the lifetime of the donor and not at her death; in the present case no transfer whatever occurred during the life of the donor but only at his death, thus bringing the transaction directly within the purport of the Act of 1919 and subjecting it to the tax therein provided.

Decree affirmed at cost of appellant.