## Ross Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer, and Burke, JJ.

*Hyman A. Guth*, for petitioner.

*Marvin Katz*, contra.

LEFEVER, J., January 12, 1962.—Eugene M. Ross died on November 13, 1959, intestate. He was survived by his wife, Ella Ross, and one child, Phyletta Gray, also known as Phyletta Perillo. Letters of administration were granted to the widow on May 2, 1960. His administrative estate was of negligible value.

For many years prior to his death, decedent had been an employe of Sears, Roebuck and Company. As such, he was a member of the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Company Employees. Decedent designated his daughter, Phyletta Gray, as the beneficiary of his interest in said fund. As a result thereof, the trustees of the fund delivered cash and securities, valued at $10,410.73, to the daughter after decedent's death.

On May 2, 1960, the widow filed an "Election to Take Against" "any last will and testament" of decedent, "all conveyances he may have made in his lifetime" and "the interest he had in the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Company Employees."

On June 24, 1960, the widow filed a petition for a citation directed to the daughter, Phyletta Gray, and the trustees of the Savings and Profit Sharing Fund of Sears, Roebuck and Company Employees to show cause why they should not file an account of the sum on deposit to the credit of decedent at the time of his

death and pay the same to the administratrix of his estate.

Each respondent filed separate preliminary objections, raising the question of the jurisdiction of this court. On December 20, 1960, pursuant to stipulation of counsel, the preliminary objections of the trustees of the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Company Employees were sustained by decree of this court. Consequently, Phyletta Gray is now the sole respondent.

On April 27, 1961, a stipulation of counsel was filed. It contained various facts and exhibits which it was stipulated should be "incorporated in the petitioner's application nunc pro tunc."

The narrow issue presently before us is whether or not this court has jurisdiction over this disputed fund in possession of decedent's daughter.

The Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 102(6) (xi), specifically excludes from the jurisdiction of this court "A trust primarily for the benefit of business employees, their families or appointees, under a stock bonus, pension, disability or death benefit, profit-sharing or other employee benefit plan." It is clear, therefore, that this court does not have jurisdiction over the administration of the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Company Employees.

The question, however, is not the administration of the fund, but the determination of who is entitled to decedent's interest therein. This involves the application of section 11 of the Estates Act of April 24, 1947, P. L. 100, as amended. The widow has filed the requisite election to take against decedent's estate and his extra-testamentary property. Whether or not that election reaches the instant fund is the issue.

Section 11 provides that "A conveyance of assets by a person who retains a power of appointment by

will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, . . ."

Subsection (d) of amended section 11 (Act of February 17, 1956, P. L. 1073, 20 PS §301.11 (d)) specifically provides: "The court having jurisdiction of the deceased conveyor's estate shall determine the rights of the surviving spouse in the property included in the conveyance." This court has jurisdiction over decedent's estate. A fortiori, it has jurisdiction to determine the widow's rights, if any, in the disputed fund.

It may be argued that a pension fund is like life insurance, which is excluded from the purview of this section by express provision. However, this court has jurisdiction over life insurance policies in certain instances: Henderson Estate, 395 Pa. 215, 229, et seq. Moreover, a pension fund and life insurance are not the same. In Dorsey Estate, 366 Pa. 557, the Supreme Court reached this conclusion with regard to the identical pension fund now before us, stating, at page 562:

". . . the designation of the beneficiary under the facts of the present case is not analogous to the designation of a beneficiary in a life insurance policy. The funds payable by an insurance company to the beneficiary of a life insurance policy never formed part of the estate of the decedent and therefore did not 'pass from' that estate but directly from the assets of the insurance company (cf. *Housekeeper's Estate*, 10 D.&C. 494, 497) whereas, here, as previously pointed out, the property involved did form part of decedent's estate in his lifetime and passed to the beneficiary, not from the employer-Company but from the decedent's estate."

The orphans' court has decided other cases involving pension funds and no doubt as to jurisdiction appears therein: Dorsey Estate, supra, 366 Pa. 557; Enbody & Burke Estates, 85 D. & C. 49, 56. In these cases, jurisdiction was acquired under the transfer inheritance tax statutes. In the instant case, jurisdiction arises under section 11 of the Estates Act of April 24, 1947.

Section 301 (13) of the Orphans' Court Act of August 10, 1951, vests basic and exclusive jurisdiction in the orphans' court over "The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative *to have been in the possession of the decedent at the time of his death.*" (Italics supplied.) This statute has been construed to vest jurisdiction of the broadest scope in this court in such matters: Hallman v. Carr, 404 Pa. 216; Rogan Estate, 394 Pa. 137; Webb Estate, 391 Pa. 584; Henderson Estate, supra, 395 Pa. 215, and Fell Estate, 369 Pa. 597. Was the disputed fund, or any part of it, "in the possession of the decedent at the time of his death" or "registered in the name of the decedent"? This is the court to decide that question.

Dorsey Estate, supra, 366 Pa. 557, 561, would indicate that the disputed fund here involved was either "registered in the name of decedent" or was "in the possession of the decedent at the time of his death," at least constructively, viz.:

"The fact that the trustees thus had some discretionary power to determine the mode of payment at the time of the employe's withdrawal or in the event of his death in nowise limited *his absolute right to withdraw his share of the property in the fund or to dispose of it at his death,* but governed only the form in

which he or his designated beneficiary or his estate would receive it. Once the Company's contributions became part of the fund they could never thereafter revert to the Company; it is not necessary to consider whether they are to be regarded, realistically, as additional compensation for the services rendered by the employee or as constituting a pure gift on the part of the Company, since, in view of the depositor's right to withdraw in his lifetime the total amount of the fund credited to him or to make full disposal of it at the time of his death, *he had, in any event, substantial ownership of his entire share of the fund and accordingly, in transferring it to the beneficiary designated by him he was transferring not only* **his own property** *to the extent that it represented contributions from his salary, but also* **his own property** *to the extent that it represented his proportionate share of the Company's contributions,* and therefore he was not in anywise acting merely as the donee of a power of appointment." (Boldface represents emphasis of the Supreme Court; italics supplied.)

It would appear from the above that the disputed fund, or at least a part of it, constituted property within the purview of section 11 of the Estates Act of 1947.

Section 11 of the Estates Act of 1947 was intended to eliminate the loophole in the law which enabled the deceased spouse to retain important rights in the property in his lifetime and then give to anyone he chose, free and clear of any marital rights of his surviving spouse. As commented by the commissioners (20 PS §301.11) :

". . . this section preserves for the surviving spouse the right to share in the decedent's assets *where the decedent has retained important rights of ownership at death.* . . . Indeed, the situation in Pennsylvania has

been such that it was stated correctly that 'it is only the stupid husband, who, against his wishes, would be forced to allow his wife to share in his personalty.' " (Italics supplied)

As stated in Behan Estate, 399 Pa. 314, 321:

"It is clear that Section 11 was passed to prevent a husband, intentionally or otherwise, from defrauding his surviving wife of her marital rights by an inter vivos trust which contained a power of revocation or consumption or a power of general or special appointment by will. For centuries the law has sought to protect a wife and preserve for her some share in her husband's property. . . ."

And again, in Pengelly Estate, 374 Pa. 358, 369, the court stated:

"However, the Act is confirmatory of a long existing policy of the Commonwealth to protect the rights of widows, and irrespective of the husband's motive in creating an inter vivos trust which excludes his widow from participation in the trust fund, *any doubt as to the effectiveness of the trust in this regard should be resolved in favor of the widow.*" (italics supplied)

It follows from all of the above that section 11 of the Estates Act, as amended, establishes the public policy of this Commonwealth to bend every effort and process to reach extra-testamentary property of decedent in favor of the widow, and that this court should construe the section broadly to this end.

Finally, it is the long-established practice of this court not to decide the right to property on preliminary objections, unless that right is unchallenged and free from doubt: Schmitz Trust, 3 D. & C. 2d 185. However, in this case, there are many open questions, viz.: the precise working of the pension fund involved; the amount of money contributed thereto by decedent; the portion of the disputed fund over which

decedent had complete control; the exact circumstances under which the fund was paid to respondent, Phyletta Gray, etc. It follows that this case is not ripe for decision at this stage of the proceedings.

We conclude that this court has jurisdiction to determine the rights of the widow, if any, in this fund under section 11 of the Estates Act of April 24, 1947, as amended. Her rights, if any, shall be determined at the hearing of this case.

Accordingly, the preliminary objections are dismissed, with leave to respondent to file an answer to the petition within 20 days of the date hereof.