## Robeson Estate

*Coffin, Grifo and DeRaymond,* for appellants.
*M. J. Goodman,* for Commonwealth.

BARTHOLD, P. J., February 17, 1964.—This is the appeal of Lafayette Trust Company and Edward W. Scully, executors of the estate of Harold B. Robeson, deceased, from the assessment of inheritance tax upon benefits payable after decedent's death to his designated beneficiary from the retirement fund set up by Nazareth Cement Company, decedent's employer.

On April 1, 1950, Nazareth Cement Company en-

tered into a "Group Annuity Contract" with Prudential Insurance Company of America providing for retirement benefits for its salaried employes. Effective January 1, 1958, the contract was continued and amended to provide improved benefits for salaried employes. The contract as continued and amended was designed to provide funds for carrying out the Nazareth Cement Company Retirement Income Plan for Salaried Employes as constituted January 1, 1958.[1] The plan is a cooperative one under which participating employes and the company share in accumulating funds for the purchase of annuities with the company paying the greater share of the cost. A participant contributes to the plan through payroll deductions at a specified rate. The company makes regular payments to the insurance company which, together with the contributions of the participants will cover the cost of the benefits provided under the plan.

On December 28, 1950, Harold B. Robeson executed an application for membership in the plan and authorized payroll deductions. At the same time he designated his wife, Alice Robeson, beneficiary "with right to change reserved."

Harold B. Robeson died on October 5, 1960, at age 64. As of the date of his death he had been in continuous service with the company for 36 years.

On November 1, 1960, the insurance company issued a "Beneficiary Certificate" which stated that due to the death of the participant, Harold B. Robeson, settlement shall be made in accordance with the Group Annuity Contract by paying to Alice Robeson monthly installments of $1,884.60 for 120 months.

---

[1] Nazareth Cement Company will be referred to as the company and Prudential Insurance Company of America as the insurance company. The "Group Annuity Contract" and the accompanying Nazareth Cement Company Retirement Income Plan will be referred to as the plan.

It is conceded by appellant that decedent's contributions to the fund with interest amounted to $16,076.40, and that the company made payments to Prudential Insurance Company in the sum of $195,081.86 to provide the above annuity.

On April 28, 1961, the executors of the last will and testament of Harold B. Robeson, deceased, filed an inventory and appraisement of the assets of the estate. The executors included as a taxable item the contributions made to the fund by decedent, viz., $16,076.40. They did not include as a taxable item the sum of $191,-636.11, which represented the present net worth of the 120 monthly installments of $1,884.60 payable to decedent's widow.

On March 16, 1962, the Commonwealth's appraiser filed an appraisement which included as a taxable item the sum of $191,636.11 less credit for the sum of $16,076.40, which the executors had included as a taxable item in their appraisement.

The executors appealed from the Commonwealth's appraisement. The question raised by the appeal is whether the benefits payable under the plan to the beneficiary designated by decedent are taxable as part of decedent's estate under the provisions of the Pennsylvania Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, et seq.

"The Pennsylvania inheritance taxes are excises imposed by the Legislature on the privilege of inheritance or succession to the property of a decedent, or the privilege of receiving the property of a decedent by a transfer that is essentially a testamentary one. . . . It can be said of the transfer inheritance tax, as well as other excise taxes, that it lays its hand upon estates under such circumstances and claims a share which the Commonwealth retains for itself as the price of allowing a transferee to inherit, and that only the estate remaining after the payment of the tax passes to the

transferor": 36 P. L. Encyc. Taxation §482, p. 476; Tack's Estate, 325 Pa. 545, 548.

Appellants contend that Harold B. Robeson did not have dominion or control over the fund representing the benefits and consequently the sum of $191,636.11 payable to his widow from the fund was not decedent's property and therefore is not taxable.

The Commonwealth contends that the benefits were property of Harold B. Robeson which were transferred on his death to the beneficiary designated by him and therefore taxable as part of his estate.

We agree with the Commonwealth's contention. The provisions of the "Group Annuity Contract" and the accompanying "Retirement Plan" clearly disclose that Harold B. Robeson by reason of his age and years of service had acquired vested rights in the fund representing the benefits and had the additional right to designate and change the recipient of the benefits.

The plan contains the following provisions:

"ARTICLE NINE

"9.2 In the event of the death of a Participant while in the active employment of the Company and subsequent to his completion of 10 years of Credited Service and attainment of age 55, but prior to his Early or Normal Retirement Date, his Beneficiary will receive for a period of 10 years certain the Early Retirement Pension which such Participant would have been entitled to had his Early Retirement Date been the first day of the month immediately following the date of his death. In the event of the death of a vested former Participant qualifying for benefits in accordance with the terms of 10.2, the death benefits shall be as described in 10.5."

"ARTICLE TEN

"10.2 A Participant whose employment terminates after he has *either* completed 10 or more years of

Credited Service, *or*, after he has attained age 40, shall have a vested right to all or a portion of the benefits attributable to Company contributions and may elect:

"(b) to allow his contributions to remain in the Plan in which event he shall be entitled to receive the following percentage of the pension benefits purchased by Company contributions to the date of his termination."

Harold B. Robeson had satisfied the conditions of article 9, sec. 9.2, supra. At the time of his death on October 5, 1960, he had attained age 64 and had accumulated 36 years of service with the company. He had earned the benefits payable under the plan.

Harold B. Robeson had also satisfied the conditions of article 10, sec. 10.2, supra. He had been with the company more than 20 years and had attained age 64, hence under the provisions of article 10 he had a vested right in 100 percent of the pension benefits purchased by the company contributions.

The law is well settled that "retirement pay" is " 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay. Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; *but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation:*" Retirement Board of Allegheny County v. McGovern, 316 Pa. 161, 169 (Italics supplied).

The above principles are also determinative of the rights of employes in private pension systems.[2]

For the reasons hereinabove stated, it is clear that Harold B. Robeson had vested rights in the fund and therefore the benefits in question were the property of the annuitant, Harold B. Robeson. Since said annuitant had the right to designate and change the beneficiary or the person who was to receive the benefits under the annuity contract after his death, it is equally clear that the designation of the beneficiary operated as a transfer of the death benefits.[3]

The transfer of the proceeds of an annuity contract to a beneficiary designated by an annuitant which takes effect in possession or enjoyment on the annuitant's death, as in the instant case, is not exempted from inheritance tax and is taxable as property of the deceased annuitant's estate.[4]

Appellant relies upon the decisions in Enbody Estate, 85 D. & C. 49, and Burke Estate, 85 D. & C. 56, but they are clearly distinguishable from the case at bar. In both cases the court found that the company owned the funds and the employe had no interest in them. In the instant case the employe had vested rights not only in the funds contributed by him but also in the fund contributed by the company, which rights could not be divested by a discontinuance or modification of the retirement or annuity plan. Under the Group Annuity Contract the employe had more than a mere expectancy.

We are firmly of the opinion that the Commonwealth's appraiser properly included as a taxable item of the estate the sum of $191,636.11, representing the present net worth of 120 monthly installments of $1,-

---

[2] Harvey v. Allegheny County Retirement Board, 392 Pa. 421, 427, footnote 1.

[3] Hoelzel Estate, 101 Pitts. L. J. 77.

[4] Bayer's Estate, 345 Pa. 308.

884.60 each, payable to the beneficiary less credit for the sum of $16,076.40, which the executors had reported as a taxable item.

### Decree Nisi

And now, February 17, 1964, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the appeal of Lafayette Trust Company and Edward W. Scully, executors of the Estate of Harold B. Robeson, deceased, from the Commonwealth's appraisement dated March 16, 1962, be dismissed.

The clerk of the orphans' court shall enter this decree nisi and give notice of the same to the parties or their counsel, and if no exceptions are filed within 20 days this decree shall be entered by the clerk of the orphans' court as a final decree.