## Kraynok v. Kraynok Estate

*Michael Ristvey, Jr.,* for plaintiffs.
*Henry E. Sewinsky,* for defendant.

STRANAHAN, P. J., August 10, 1971.—This matter is in assumpsit and grows out of a dispute concerning $2,800 which is the net proceeds in a Westinghouse Electric Corporation personal savings plan.

George W. Kraynok during his lifetime was an employe of the Westinghouse Electric Corporation, and on June 30, 1967, elected to participate in the Westinghouse personal savings plan. This plan provided that six percent of Kraynok's wages would be deducted and paid to a trustee, who, in turn, would receive an additional amount of 50 percent of the deducted wages from the Westinghouse Electric Corporation. The total amount would then be invested in United States Savings Bonds and Westinghouse Electric Corporation common stock.

The purpose of the plan is obvious in that it encourages employes to save money by paying to them

an amount from the corporation as a bonus which is equal to one-half of the amount saved by the employe.

The plan also provides that the employe may name beneficiaries in the event of his death, and George W. Kraynok did this on June 30, 1967, when he designated Mary Kraynok and Joseph Kraynok, his mother and father, as beneficiaries under the plan.

The plan also provides that the employe may at any time discontinue his participation, or if the employe is laid off work he has the right to withdraw from time to time from the plan, and if this lay-off continues for six months, all of the securities credited to his savings shall be distributed to him.

The plan is quite extensive, but it is apparent from the reading of the plan that ownership of the assets credited to the employe's account would be in the employe rather than in the company. Therefore, the plan actually amounts to the placing in trust of funds belonging to the employe, together with funds given to him as a gift by the company, which funds are subject to investment either in savings bonds or common stock, but, in any event, the funds at all times are owned by the employe.

In addition to this, the employe has the right to change beneficiaries at any time prior to his death.

George W. Kraynok died intestate August 6, 1970, and at that time he had accumulated assets in the plan amounting to approximately $2,800.

His wife made arrangements for the funeral and agreed to pay the costs, apparently believing that the proceeds of the savings plan would be payable to her. This anticipated receipt of the money failed to materialize, since the beneficiaries, the mother and father of decedent, have taken the position that they are entitled to the $2,800.

There is no allegation in the complaint in assumpsit that the estate is insolvent and that the $2,800 is needed to pay creditors of the estate, but it is rather the position of the estate that the assets in the plan should be considered assets of the estate and, therefore, would be subject to creditors if any exist. There is no allegation that the widow is endeavoring to take her intestate share out of the funds.

There may be some question as to whether this action should have been commenced in the orphans' court, but that has not been raised as an issue, and the court is not going to concern itself with that problem.

Westinghouse Electric Corporation has paid the money into court because it did not desire to expose itself to the possibility of double liability, and it has been agreed that distribution of the money is made subject to the decision of the court.

Julia Kraynok, the wife of decedent, has qualified as administratrix of the Estate of George W. Kraynok, and commenced suit against Westinghouse Electric Corporation in the name of the estate. The Westinghouse Electric Corporation interpled the present plaintiffs, Mary Kraynok and Joseph Kraynok, in order to place all interested parties on the record.

The interpled plaintiffs, Mary Kraynok and Joseph Kraynok, have filed preliminary objections to the complaint in assumpsit. These preliminary objections are in the nature of a demurrer, alleging that plaintiffs have failed to set forth a good cause of action.

There are a considerable number of cases which have dealt with situations where the decedent has created an inter vivos trust by placing in the hands of the trustee assets owned by him, with the agreement that the trustee would distribute those assets to a beneficiary designated by the party creating the

trust, and subject to change at any time prior to his death. The party creating the trust retained to himself the right to withdraw funds from the trust or to revoke the trust entirely.

In Brown Estate, 384 Pa. 99, the Supreme Court adopted the opinion of the lower court which appears in 4 D. & C. 2d 722. In this case, the settlor, Brown placed in trust with a bank certain insurance policies, which were paid under an agreement whereby the settlor would retain complete control of the insurance policies, and all of the proceeds thereof, during his lifetime, and the bank, named as a trustee, had no authority whatever during the life of the settlor other than acting as custodian of the policies. All premiums on the policies had been paid by the settlor during his lifetime. The settlor died and his widow elected to take against the will and against the trust, since she was not the named beneficiary. The court held that the widow's claim would be allowed because ownership of the insurance policies remained with the settlor since he retained control of them, and, therefore, the trust agreement was testamentary in nature and the widow had the right to take her intestate share by electing to take against the will.

The Brown case appeared to be consistent with the then existing law which distinguished between situations in which the settlor retained control over the assets of the trust with the right of revocation and situations in which ownership of the assets of the trust was not controlled by the settlor, even though he had the right to designate the beneficiary. In the latter situation, the court ruled that since the funds were not owned by the settlor, there was no testamentary disposition at his death, even though he retained the right to change beneficiaries.

In Dorsey Estate, 366 Pa. 557, this principle of law is discussed in an action arising out of a claim for

transfer inheritance tax on that portion of the trust representing the employer's contribution. The court held that the employer's contribution was a gift to the employe and, therefore, became the employe's property and was subject to inheritance tax.

The court distinguishes between money paid under an insurance policy and money paid under the present situation by pointing out that the proceeds of an insurance policy are not money owned by decedent but rather money that originates from the company, whereas in the present situation the money was owned by decedent at the time of his death.

In DeVenuto Estate, 35 D. & C. 2d 352, the court wrote an extensive opinion in which the general rule was applied that the right to designate a beneficiary of a retirement plan does not, without more, result in a transfer of a property interest, thereby making it subject to transfer inheritance tax. In this case, the assets of the retirement plan were not owned and subject to the control of decedent.

In Ross Estate, 25 D. & C. 2d 777, the court again applied the general rule in a situation where decedent had participated as an employe of Sears Roebuck and Company in a pension fund, and the assets of the pension fund were under the control of decedent and apparently owned by him at the time of his death.

The impact of these cases apparently had some effect upon the legislature of the Commonwealth of Pennsylvania, because in 1970 a statute was enacted, which appears as 20 PS §301.7(a). This statute has been subject to little or no interpretation by the courts, but appears to be aimed at overruling the law as was set forth in Brown Estate, supra, and other cases cited above. The statute provides, in part, as follows:

"The designation . . . of beneficiaries of benefits

payable upon or after the death of a participant under any . . . employee benefit plan, shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will. This section shall apply regardless of whether . . . the employee benefit plan designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, and regardless of whether any such trust is amendable or revocable, or both, or is funded or unfunded, and notwithstanding a reservation to the settlor of all rights of ownership in the insurance contracts or under the employe benefit plans."

We, therefore, conclude that the law has been changed by this statute and it now becomes immaterial whether the settlor retains control and ownership over the assets of the trust, since the statute provides that, in no event, is this to be construed as being testamentary in nature. Such being the case, the assets do not come under the administratrix or become a part of the estate but rather pass under the terms of the plan.

We, therefore, conclude that Julia Kraynok, as administratrix of the estate of her deceased husband, has no claim to the assets of decedent in the plan, and that payment should be made to the beneficiaries, Joseph Kraynok and Mary Kraynok, husband and wife.

Since the matter before the court is in the nature of a demurrer on the basis that the estate has not set forth a good cause of action, we must sustain the demurrer.

## ORDER

And now, August 10, 1971, the preliminary objection in the nature of a demurrer filed by Joseph

Kraynok and Mary Kraynok, husband and wife, and against the Estate of George W. Kraynok is sustained.