400 A.2d 591

**ESTATE OF Robert Glenn RAVDIN, Deceased.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1977.

Decided Oct. 5, 1978.

Catherine Gallagher Barone, Asst. Atty. Gen., Fort Washington, for appellant.

Walter E. Nelson, Jr., Philadelphia, for appellee, William Dickie Ravdin, Executor of the estate of Robert Glenn Ravdin, deceased.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This appeal involves the taxability for Pennsylvania inheritance tax purposes of the decedent's interest in a "Keogh" type pension or retirement plan.

Robert Glenn Ravdin, a physician, died in March, 1972, at age forty-nine. His executor filed a Pennsylvania inheritance tax return in which he included on Schedule B ("personal property") the following statement, marked "information only":

"Decedent's interest in the partnership retirement plan on the date of his death was $55,590.52. Decedent had named his wife, Carolyn Port Ravdin, as the beneficiary of this sum. Therefore, it is the position of the Executor that this item is not taxable for Pennsylvania Inheritance Tax purposes."

The Pennsylvania Department of Revenue, however, included the value of Dr. Ravdin's interest in the retirement plan in its assessment of the Pennsylvania transfer inheritance tax due from the estate. The orphans' court division of the court of common pleas reversed this ruling and sustained the executor's position that the interest in the retirement plan was exempt from tax. *Ravdin Estate,* 25 Fiduc.Rep. 640 (O.C.Div.Montg.Co.1975). The Commonwealth having now appealed to this Court, we find no error in the decision below, and will affirm.[1]

1. This direct appeal was filed pursuant to Section 202(3) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. II, 17 P.S. § 211.202(3) (Supp.1978), since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S. § 722(3) (effective June 27, 1978).

At the time of his death, the decedent was a member of a medical partnership known as "I.S. Ravdin, M.D., Jonathan E. Rhoads, M.D. and Julian Johnson, M.D. and Associates." There was in effect at the time a partnership retirement plan created in 1956, but amended in 1963 to comply with the newly-enacted federal Self-Employed Individuals Tax Retirement Act of 1962, Pub.L. No. 87–792, 76 Stat. 809, sometimes known as the "Keogh Act" or "H.R. 10"[2] (the number of the bill in the House of Representatives). Under the retirement plan, contributions were made by the partnership to the trustee named in the plan on behalf of the employees of the partnership. Dr. Ravdin was a "self-employed employee", defined as a medical partner having an interest of 10% or less in the capital of the partnership. Payments made under the plan to the trustee were deducti-

---

Appellee has filed a motion to quash the Commonwealth's appeal on the ground that the Commonwealth failed to file exceptions to the decree below. We reserved decision on the motion until oral argument. In *Estate of Miller,* 467 Pa. 193, 197 n.3, 355 A.2d 577 (1976), we held that there is no requirement that a party file exceptions in the circumstances presented here. Therefore, we deny appellee's motion to quash. Compare *Rothermel Estate,* 461 Pa. 1, 334 A.2d 603 (1975).

2. Under the Internal Revenue Code of 1954, an employer contribution to a qualified pension or profit-sharing plan does not result in taxable income to the employee at the time it is made. The employee is taxed only upon receipt of payment from the retirement plan and then at the presumably lower tax rates which will apply when he has retired and is past the peak of his earning potential. The use of a qualified pension plan, therefore, enables the employer to offer his employees an effective deferred compensation benefit. See generally Chommie, *Law of Federal Income Taxation* § 89, at 206–07 (1968).

Until 1962, however, the deferred compensation concept was not available to self-employed individuals, including those who owned enterprises from which they derived their livelihoods. To the extent that such persons purchased annuities or otherwise saved for retirement purposes, they were obliged to do so out of income which had already been subjected to income tax.

Responding to the complaints that this system was unfair to self-employed taxpayers, the Congress enacted the Self-Employed Individuals Tax Retirement Act of 1962, Pub.L. No. 87–792, 76 Stat. 809. Under this statute, self-employed individuals and the owners or proprietors of businesses were for the first time permitted, within specified limitations, to make contributions out of income to qualified pension plans or individual retirement annuity accounts.

ble from the gross income of the plan participants under Section 401 of the Internal Revenue Code of 1954, as amended by the Keogh Act.

Dr. Ravdin's contributions to the retirement plan were nonforfeitable and fully vested when made. Upon his ceasing to be a partner for any cause other than death and after attaining age 59½ or becoming disabled, Dr. Ravdin had the right to receive an amount equal to the value of his interest in the retirement plan as of the last valuation date. In the event of his death prior to retirement and while still a plan participant (which is what occurred), Dr. Ravdin's interest in the plan was to (and did) pass to his designated beneficiary, his wife.

Had Dr. Ravdin survived and retired at or after age 59½, the committee which administered the retirement plan would have had available certain options as to the mode of payment to Dr. Ravdin of his interest in the trust fund. It could have made the distribution in cash within 6 months of death; in installments; or by the purchase of an annuity contract on the life of Dr. Ravdin with or without survivor benefits for his wife, or any combination of the foregoing, such distributions to be made within certain time periods.

The precise question presented by this appeal is the applicability of the exemption from inheritance tax found in Section 316 of the Pennsylvania Inheritance Tax Act of 1961, 72 P.S. § 2485–316 (Supp.1978).[3] Our interpretation of this section will be aided by a brief discussion of the history of the taxation of pensions, profit-sharing plans and the like under Pennsylvania inheritance tax laws.

---

**3.** That section as amended, see *infra,* p. 594, provides in pertinent part as follows:

"Section 316. *Employment Benefits.*

Payments under pension, stock-bonus, profit-sharing and retirement annuity plans, to distributees designated by decedent or designated in accordance with the terms of the plan, other than the estate of the decedent, are exempt from inheritance tax to the extent that decedent before his death did not otherwise have the right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments so made . . . . ."

Section 1 of the Transfer Inheritance Tax Act of 1919, June 20, P.L. 521, art. I, formerly 72 P.S. § 2301 ("the Act of 1919"), imposed a tax on the transfer of property at death. It contained no statutory provision comparable to Section 316 of the present Inheritance Tax Act of 1961. Several orphans' courts in Pennsylvania, however, rendered decisions as to whether amounts in the possession of an employer at the death of an employee and paid to a beneficiary designated by the decedent were subject to the tax imposed by the Act of 1919.

The argument in favor of taxability was that the beneficiary received a gift from the decedent effective on death, and that such transfers to take effect at death were clearly encompassed by Section 1(c) of the Act of 1919. The argument to the contrary was that the decedent, in designating a beneficiary to receive the unconsumed employment benefits in the hands of the employer, had merely exercised a power of appointment over property which the decedent had never during his life possessed or enjoyed. The cases therefore turned on the extent to which the decedent had the power to possess and enjoy the funds in question during his life. The majority of the cases held that the fund in question was taxable; two decisions were to the contrary.[4]

Under the Act of 1919 as construed in the cases cited in note 4, *supra,* the following propositions emerge: (1) if a Pennsylvania citizen would escape the imposition on his death of a transfer inheritance tax on his interest in a

---

4. The two cases holding the fund exempt from tax are *Enbody and Burke Estates,* 85 Pa.D. & C. 49, 56 (O.C.Phila.Co.1953) and *DeVenuto Estate,* 35 Pa.D. & C.2d 352 (O.C.Mont.Co.1964). Both of these decisions involved non-contributory retirement plans wherein the decedent upon retirement had only the right to receive a regular retirement income from his employer's pension or trust fund.

The cases rejecting the argument for exemption include: *Dorsey Estate,* 366 Pa. 557, 79 A.2d 259 (1951); *Hoelzel Estate,* 101 P.L.J. 77 (1952); *Inheritance Tax-Profit Sharing Funds,* 6 Fiduc.Rep. 93 (Op. Atty.Gen.1955); *Cameron Estate,* 15 Pa.D. & C.2d 557, 8 Fiduc.Rep. 195 (O.C.Allegy.Co.1958); *Eastlack Estate,* 16 Pa.D. & C.2d 725, 9 Fiduc.Rep. 303 (O.C.Phila.Co.1959); *Luttringer Estate,* 56 Lanc. 533 (1959); *Matthews Estate,* 53 Luz.L.Reg. 159 (1963); *Robeson Estate,* 34 Pa.D. & C.2d 296 (O.C.Northampton Co.1964).

retirement plan to which he was a party, such person in his lifetime must not have had the legal right to obtain the entire fund; [5] (2) the only enjoyment the prospective decedent might have in the fund and yet not have it taxed as a transfer at death must be limited to receipt of a regular monthly retirement payment; and (3) the decedent may have exercised a power to designate a beneficiary without incurring tax liability. See Grossman & Smith, *Pennsylvania Inheritance and Estate Tax,* § 316–2.1 at 66 (1971 Rev.).[6]

When the Act of 1919 was repealed and replaced by the Inheritance and Estate Tax Act of 1961, P.L. 373, 72 P.S. § 2485–101 *et seq.* ("the 1961 Act"), the law established by the line of cases under the 1919 Act discussed above was codified by the inclusion of Section 316. As enacted, that section made no reference to retirement annuities. It read as follows:

"Section 316. *Employment Benefits.*

Payments under pension, stock-bonus or profit-sharing plans, to distributees designated by decedent or designated in accordance with the terms of the plan, other than the estate of the decedent, are exempt from inheritance tax to the extent that decedent before his death did not otherwise have the right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments so made . . . ." [7]

**5.** This limitation followed from the basic premise of the argument made by taxpayers in the earlier cases under the Act of 1919, *viz.,* that the decedent had merely exercised a power of appointment over a fund which he had no right to possess or enjoy during his life.

**6.** The authors thus summarize the effect of the decisions under the Act of 1919:

". . . The mere right to designate the beneficiary of the unconsumed employee benefits, like the right to designate an insurance beneficiary, resulted in no inheritance tax: Burke and Enbody Estates. . . . However, the addition of other beneficial rights in the decedent, such as the right to assign his benefits . . . or to withdraw his credit or retirement . . . or resignation . . . has resulted in taxation." (Additional citations omitted).

**7.** A "1963 Report—Joint State Government Commission", reprinted as a note following 72 P.S. § 2485–316 (1964), reads:

This Court interpreted Section 316 in *Huston Estate*, 423 Pa. 620, 225 A.2d 243 (1967), *affirming* 79 York L.Rec. 181 (O.C.1966). In that case an employer had created and had funded a pension plan under the terms of which an employee, upon either actual retirement or, in certain other cases, reaching a designated "normal retirement age," would receive a defined number of monthly payments; if the employee died before all such payments were made, as happened in that case, the remaining funds would be paid to such beneficiary as the employee had designated; and the employee had no right otherwise to possess, assign or anticipate the fund. *See* 79 York L.Rec. at 182–83, 185–86. We held that the statutory phrase "right to . . . enjoy" "connotes substantial present economic benefit," 423 Pa. at 624, 225 A.2d at 245, and that the right to receive regular monthly payments upon retirement was not such a benefit.[8]

In 1968, Section 316 was amended[9] in two respects: first, there was added to the "employment benefits" which could escape inheritance taxation under Section 316 an arrangement designated as a "retirement annuity"; and second, "employment benefits" described in Section 316 which are not taxed to a decedent's estate under federal estate tax law

"This conforms with existing law: *Dorsey Est.*, 366 Pa. 557 [79 A.2d 259]; *Eastlack Est.*, 16 Pa.D. & C.2d 725, 9 Fiduc.Rep. 303; *Cameron Est.*, 15 D. & C.2d 557, 8 Fiduc.Rep. 195, 8 Fiduc.Rep. 600; Inheritance Tax-Profit Sharing Funds, 6 Fiduc.Rep. 93; *Burke & Enbody Estates*, 85 D. & C. 49, 3 Fiduc.Rep. 344; *Hoelzel Est.*, 101 Pitts.L.J. 77. The exclusion of 'life insurance' does not, of course, embrace annuities.

"The exemption 'to the extent that decedent before his death did not otherwise' have possessory rights is intended to enable the separation of the several components of the type of funds involved in *Burke & Enbody Estates*, supra, and to prevent 'assign' from being interpreted as including the right to designate the beneficiary of such funds."

8. This holding was in accord with the decisions in *Enbody and Burke Estates*, and *DeVenuto Estate, supra* note 3. Nothing in the adoption of Section 316 of the Act of 1961 indicated a legislative intent to overrule these decisions. *See* note 7, *supra*.

9. Act of January 20, 1968, P.L. (1967) 1031, 72 P.S. § 2485–316 (Supp.1978). See note 3, supra, p. 593. A corresponding amendment was made at the same time to Section 741 dealing with deduction and collection of tax. 72 P.S. § 2485–741.

are also exempt from the Pennsylvania transfer inheritance tax. This latter exemption is available even if the decedent has the "substantial present economic benefit" in the retirement fund which, absent this new exemption, would have made Section 316 inapplicable. The thrust of the second exemption added by the 1968 amendment seems clear, but that clause is not here in issue. The first part of the amendment, however, is involved, for it is appellee's position that the words "retirement annuity" embrace a Keogh type plan such as the one to which this decedent was a party.

It is appellee's position that by the term "retirement annuity" in the 1968 amendment, the legislature meant to exempt not only retirement annuities provided by an employer for the benefit of its employees,[10] but also retirement annuities purchased by individuals whom the law has traditionally regarded as self-employed or as owners of enterprises, at least where the annuity is purchased out of the income generated by operation of the enterprise or from services rendered by the self-employed person. We agree. We think that the inclusion in Section 316, as amended in 1968, of "retirement annuity" is indicative of the legislative intention that a Keogh type plan is the sort of benefit that might qualify for exemption under that section and the cases elucidating it.[11]

This Court has not heretofore been obliged to decide squarely whether employee benefit plans referred to in Section 316 of the Act of 1961, either before or after the

10. The phrase "retirement annuity" is sometimes used to describe the retirement benefits which an employer provides to a covered employee, especially where the employer, rather than funding its own pension plan, enters into a "group annuity contract" with an insurance or annuity company. See, e. g., *DeVenuto Estate, supra* note 4 (employer-provided group annuity contract).

It seems clear that by the amendment of 1968 the legislature meant at a minimum to include in the exempt category a "retirement annuity" provided by an employer in lieu of a pension plan or the like.

11. The amendment of 1968 left untouched the requirement that in order to qualify for the exemption the decedent before his death not have had "the right to possess . . ., enjoy, assign or anticipate the payments so made."

1968 amendment, were exempt from tax if funded by employee contributions as well as by employer contributions. The text of the section makes no distinction as to the source of the fund, but speaks only in terms of the employee's right to possess, enjoy, assign or anticipate the payments for his benefit to be made therefrom as the factors which may defeat exemption. As stated above, the degree of dominion which the deceased employee during his lifetime could exercise over the fund has always been the touchstone of decision as to taxability. *See* text at note 4, *supra,* and cases cited therein. See also *Feinstein Estate,* 45 Pa.D. & C.2d 205 (O.C.Phila.Co.1968) (dissenting opinion of Shoyer, J.).[12] Two decisions subsequent to the 1968 amendment also turn on factors other than the source of contributions. Thus in *Williams Estate,* 46 Pa.D. & C.2d 698 (O.C.Div.Westmoreland Co.1969) the exemption was lost, apparently, because the employee "during his lifetime had certain rights of withdrawal from the fund," and not because the contributions were partially made by the employee. *Rothermel Estate,* 24 Fiduc.Rep. 558 (O.C.Div.Berks Co. 1975), *aff'd on other grounds,* 461 Pa. 1, 334 A.2d 603 (1975)[13], is even more categorical in holding employee contributions exempt. There the retirement fund comprised of employee contributions was held non-taxable, the decedent having had no control whatever over the fund prior to retirement.

In sum, we are satisfied both from the language of Section 316 as amended in 1968 (just six years after "Keoghtype" pension and annuity plans were allowed by Congress to qualify for income tax deferments to self-employed per-

12. *Dorsey Estate,* 366 Pa. 557, 79 A.2d 259 (1951), is in accord. The decision there, made prior to the passage of Section 316, denied exemption because the employee possessed a right of withdrawal of the entire fund during his lifetime, without distinction as between the portion contributed by the employer and that contributed by the employee. The taxability of the employee contribution, however, was conceded by the parties.

13. The final decree in this case was affirmed since the appellant had failed to file exceptions to the court's decree nisi, as required by local rules, and thereby waived the arguments sought to be raised. Pa. O.C. Rule 7.1. *See* note 1, *supra.*

sons equivalent to those enjoyed by other employees), and from the decisional law in Pennsylvania discussed above, that the partnership retirement plan to which Dr. Ravdin was a party was within the scope of Section 316 of the Act of 1961 as amended, notwithstanding that the fund was altogether comprised of employee contributions. It remains only to determine whether the exemption of the section was lost by reason of the degree of dominion Dr. Ravdin had over the fund in his lifetime. We conclude not.

The test we adopted in *Huston Estate, supra,* is still sound, namely, whether the decedent in his lifetime had a "substantial present economic benefit" in the funds which were to pass on his death to the designated beneficiary. In the case at bar, Dr. Ravdin had no substantive present economic benefit. He had a right to receive the fund only upon attaining age 59½, and retiring, or upon his earlier disability, neither of which events were subject to his control. The fund was not in his possession, and he could not assign it or anticipate payments under it; even severance of the partnership would not accelerate any payment to Dr. Ravdin from the fund. The fact that the employee's interest in the fund was vested and non-forfeitable and that eventually the employee could if he wished take the payments due him in a lump sum, is not significant in light of all the circumstances of this case. Clearly, these features do not constitute a right to anticipation or enjoyment within the meaning of Section 316, nor a "substantial present economic benefit" under the test of *Huston Estate.* Compare *Dorsey Estate,* 366 Pa. 557, 79 A.2d 259 (1951).

The decree of the orphans' court that the taxable estate of the decedent be reduced by the sum of $55,850.52 is affirmed.

Each party to bear own costs.

JONES, former C. J., did not participate in the consideration or decision of this case.