408 A.2d 1358

ESTATE of Wayne E. RANKIN, Deceased.

Appeal of Ingrid M. RANKIN, Executrix of the Estate of Wayne E. Rankin, Deceased.

Supreme Court of Pennsylvania.

Reargued Sept. 15, 1979.

Decided Dec. 21, 1979.

J. Craig Kuhn, Kuhn, Engle & Stein, Pittsburgh, for appellant.

John M. Duff, Deputy Atty. Gen., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The Legislature specifically exempts from estate taxation payments made under various insurance and retirement plans. Section 316 of the Inheritance and Estate Tax Act,[1] like the § 303 exemption for insurance proceeds,[2] exempts from estate tax virtually all retirement plan benefits that are payable "to distributees designated by decedent or desig-

---

1. Act of June 15, 1961, P.L. 373, 72 P.S. § 2485–316, as amended January 20, 1968, P.L. (1967), 1031, § 1.

2. 72 P.S. § 2485–303.

nated in accordance with the terms of the plan." The § 316 exemption is unavailable, however, when, prior to death, a decedent had the "right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments" made under the plan. At issue here is whether decedent, Wayne E. Rankin, had a "right to possess, enjoy, assign or anticipate" the benefits of his retirement plan when such benefits were available only on termination of employment or retirement. We hold that the proceeds of decedent's retirement plan fall within § 316 and are not subject to inclusion in decedent's taxable estate. Accordingly, we vacate the decree of the orphans' court and remand with directions to exclude from the decedent's taxable estate the amount of his accumulated contributions paid to beneficiaries designated in accordance with the plan.

Decedent died on October 10, 1975, at age 59. For approximately 34 years before his death, he was employed by TWA, most recently as a vice-president. Six months prior to his death, decedent, due to illness, ceased active service. During those six months decedent received disability benefits under a separate TWA disability plan.

Decedent had contributed to the TWA Retirement Plan, but received no benefits before his death. Benefits under the Retirement Plan could be obtained only after retirement or termination of employment. Decedent neither retired nor terminated his employment before his death. Following his death the benefits under the plan were paid to his wife, the designated beneficiary.

By way of a supplemental appraisement the Commonwealth included in the decedent's estate the amount of his accumulated contributions paid into the plan. On appeal, the orphans' court, at audit, agreed with the Commonwealth and dismissed the appeal. An equally divided court, en banc, affirmed. Appeal to this Court followed.

Section 316 sets out the exemption from estate taxation. "Payments under pension, stock-bonus, profit-sharing and retirement annuity plans, to distributees designated by decedent or designated in accordance with the terms of

the plan, other than the estate of the decedent, are exempt from inheritance tax to the extent that decedent before his death did not otherwise have the right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments so made." [3]

In *Huston Estate*, 423 Pa. 620, 624, 225 A.2d 243, 245 (1967), this Court, interpreting § 316, held that the right of a decedent merely to designate a beneficiary of retirement plan proceeds was not a "right to possess or enjoy" because the right to designate did not constitute a "substantial present economic benefit." Most recently, in *Ravdin Estate*, 484 Pa. 562, 400 A.2d 591 (1978), this Court held that benefits under a "Keogh Act" retirement plan were not subject to estate tax. There, as in *Huston,* the decedent before his death had the right only to designate a beneficiary. This Court expressly rejected the Commonwealth's contention that the decedent's access to the funds upon disability, death or retirement triggered estate taxability. [4] Decedent here possessed no "substantial present economic benefit." Rankin, like the decedents in *Huston* and *Ravdin,* had the right only to designate the beneficiary of the funds.

3. The proceeds of this plan did not come within the second part of the § 316 exemption. That provision exempts proceeds "to the same extent as such payments are exempt from Federal estate tax. . ." The TWA plan proceeds, because funded by employee contributions before retirement, were not exempted from federal estate tax. See I.R.C. § 2039(c).

4. "[Dr. Ravdin] had a right to receive the fund only upon attaining age 59½, and retiring, or upon his earlier disability, neither of which events were subject to his control. The fund was not in his possession, and he could not assign it or anticipate payments under it; even severance of the partnership would not accelerate any payment to Dr. Ravdin from the fund. The fact that the employee's interest in the fund was vested and non-forfeitable and that eventually the employee could if he wished take the payments due him in a lump sum, is not significant in light of all the circumstances of this case. Clearly, these features do not constitute a right to anticipation or enjoyment within the meaning of Section 316, nor a 'substantial present economic benefit' under the test of *Huston Estate.*"
*Ravdin Estate,* 484 Pa. 562, 571, 400 A.2d 591, 596 (1978).

Hence, the funds must be excluded from decedent's taxable estate.

The Commonwealth maintains that the decedent's ability to obtain retirement benefits upon termination of employment constituted a "substantial present economic benefit." The Commonwealth, however, misinterprets § 316, as the section clearly states that, for estate tax to be imposed, a decedent must have a "right to possess" the retirement funds before death. Under the terms of this plan, a "right to possess" retirement benefits before termination of employment or retirement does not exist. Because decedent was neither retired nor no longer employed, he had no "right to possess" the funds.

The Commonwealth's contention that by terminating his employment decedent would have had a "right to possess" his retirement fund contributions also ignores the substantiality and economically adverse consequences attendant upon such a decision. Indeed, such a decision would be especially unreasonable and disadvantageous here, where decedent would have forfeited all current disability and retirement benefits.[5] In harmony with the overall legislative purpose of excluding retirement plan benefits from taxation, we conclude that the Legislature did not intend to subject these benefits to taxation. Here, the decedent had not terminated his employment, therefore he was not entitled to the return of his contributions. If decedent had acted unreasonably and terminated his employment he thereby would have forfeited substantial current disability and retirement benefits and would have received only the return of accumulated contributions.

Accordingly, the decree of the orphans' court must be vacated and the case remanded with instructions to exclude from the taxable estate the return of decedent's contributions under the retirement plan.

**5.** It must be noted that the structure of the TWA Plan discouraged termination before retirement. Only the employee's accumulated contributions plus interest were recoverable in the event of early termination. Upon retirement, however, the employee would receive an annuity paid by both employee and employer contributions.

Decree vacated and remanded for proceedings consistent with this opinion. Each party pays own costs.

MANDERINO, J., did not participate in the consideration or decision of this case.

EAGEN, C. J., filed a dissenting opinion.

EAGEN, Chief Justice, dissenting.

I emphatically dissent.

The majority today ignores the clear and unambiguous language of Section 316 of the Inheritance and Estate Tax Act of June 16, 1961, P.L. 373, art. III, *as amended*, 72 P.S. § 2485–316 (Supp.1979–80) [Hereinafter: 72 P.S. § ——], violates fundamental principles of tax law by making 72 P.S. § 316 dependent upon the practicalities confronting a particular person, and reaches a horrendous result which will foster much unnecessary litigation.

This appeal presents the question whether the amount of an employee's contribution to a retirement plan, which he had a right to withdraw upon termination of employment, is subject to tax under 72 P.S. §§ 2485–101 *et seq.* upon the employee's death, or whether such contributions are exempt from tax under 72 P.S. § 2485–316. I agree with the trial court that, in the circumstances of this case, the exemption is not available and, hence, I would affirm.

Wayne E. Rankin, the decedent, had been an employee of Trans World Airlines [Hereinafter: TWA] for some thirty-four years and was a company vice-president when he died on October 10, 1975, at the age of fifty-nine. He had not been in active service for about six months prior to his death because of illness for which he received disability payments from his employer. Rankin was a participant in the TWA Retirement Plan [Hereinafter: the plan], to which both employer and employee contributed. Under the terms of the plan, these contributions were held in separate accounts for each participant or member and, upon retirement, the total contributions were combined to pay a member a monthly sum for life. If, however, a member died before

retirement (which is what happened here), his designated beneficiary received only the member's contributions plus accrued interest thereon in a lump sum.[1] An employee's contributions were fully vested upon the completion of ten years of service with TWA, the attainment of age forty-five, or total disability. A member could not assign his interest in the plan, nor could his contributions be withdrawn (after July 1, 1968) while he was still employed. The contributions were, however, immediately payable to him, with interest, upon termination of employment.[2]

Upon Rankin's death, his retirement plan contributions amounting, with interest, to $16,781.80 were paid to his widow who was his designated beneficiary and the executrix of his estate. It is the taxability of this payment which is here at issue.[3]

I agree with the auditing judge that this decedent's benefits did not come within the terms of the exemption provided by 72 P.S. § 2485–316. That section provides, in pertinent part:

1. Death benefits were paid to the beneficiary through a separate life insurance policy.

2. This last provision is made clear by Sections 5.1 and 5.2 of The Plan. These sections provide, in relevant part, as follows:
   "5.1 If the Service of a Member is terminated before his retirement and while he is living but such termination occurs on or after either his completion of ten years of Service or attainment of his 45th birthday or his becoming Disabled, he may elect at any time prior to his Normal Retirement Date to receive his Accumulated Contributions: . . .
   "5.2 If the Service of a Member terminates prior to his completion of ten years of Service or attainment of his 45th birthday or his becoming Disabled, he shall be paid his Accumulated Contributions and shall cease to be a Member."

3. The Commonwealth filed an appraisement which asserted Rankin's contributions to the plan and accrued interest were subject to tax. The executrix appealed this appraisement to the trial court, and the auditing judge, after hearing, dismissed the appeal. Exceptions to this adjudication were dismissed by an equally-divided court en banc, and this direct appeal followed pursuant to Section 202(3) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, 17 P.S. § 211.202(3) (Supp.1979–80), since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S.A. § 722(3).

"Payments under pension, stock-bonus, or profit-sharing and retirement annuity plans, to distributees designated by decedent or designated in accordance with the terms of the plan, other than the estate of the decedent, are exempt from inheritance tax to the extent that decedent before his death did not otherwise have the right to possess (including proprietary rights at termination of employment), enjoy, assign or anticipate the payments so made . . . ."

This Court recently reviewed the background of this exemption in *Ravdin Estate*, 484 Pa. 562, 400 A.2d 591 (1978), and I need not repeat the discussion of the statutory history of 72 P.S. § 2485–316 and of the case law which the section codified which appears in that case. It suffices here to note, as the Court did there, that to escape taxation pursuant to the exemption of 72 P.S. § 2485–316, the decedent "in his lifetime must not have had the legal right to obtain the entire fund," and that "the degree of dominion which the deceased employee during his lifetime could exercise over the fund has always been the touchstone of taxability." *Id.*, 484 Pa. at 570, 400 A.2d at 595 [Footnote and citations omitted]. The application of these principles to the present case is plain. As the auditing judge correctly observed, when the rather awkward statutory language is stripped of its double negative, its meaning becomes clear, viz., that payments made by an employee under a retirement plan are taxable on his death to the extent that the decedent before his death had the right to enjoy the payments so made, *including proprietary rights at termination of employment.* Here, *the decedent had the right after resigning to receive all his contributions to the plan plus accrued interest.* This "proprietary right" constitutes precisely the sort of "substantial present economic benefit," *Huston Estate*, 423 Pa. 620, 624, 225 A.2d 243, 245 (1967), that *by the very terms of the statute keeps decedent's interest in the plan outside the scope of the exemption.* See *Dorsey Estate*, 366 Pa. 557, 79 A.2d 259 (1951); *Robeson Estate*, 34 Pa. D. & C.2d 296 (O.C. Northampton Co. 1964); *Eastlack Estate*, 9 Fiduc.Rep. 303

(O.C. Phila. Co. 1959); *Luttringer Estate*, 56 Lanc. 533 (O.C. 1959).[4]

Appellant contends that the factual situation presented by this case compels a contrary result. It is emphasized that, for six months prior to his death, Rankin was unable to work and was receiving disability payments from his employer under a separate plan and that, had he resigned during this period of time, these and other benefits attributable to the employment relationship would have ceased. In this case, it is urged that decedent's right to receive his contributions upon resignation was "illusory" since no one in decedent's position would have considered obtaining immediate enjoyment on his retirement plan contributions when so much else would be lost. I must disagree *because the presence of a "substantial present economic benefit," Huston Estate*, supra [emphasis added], *under the statute is not dependent upon the practicalities of the moment.* The plain language of 72 P.S. § 2485–316 is concerned with the decedent's power to acquire the funds and the injecting of considerations not spelled out in the statute *will contravene the legislature's direction that statutory provisions exempting persons and property from taxation are to be strictly construed.* Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(b)(5) (Supp.1978). See, e. g., *Metropolitan Pittsburgh Nonprofit Housing Corporation v. Board of Property Assessment, Ap-*

---

**4.** Thus, this case is quite unlike *Ravdin Estate*, supra, in which the decedent had no right to withdraw his contributions from a retirement plan while he lived even if he resigned from the partnership that sponsored the plan. In *Ravdin*, the Court noted that the decedent there could obtain the fund only upon disability or his attainment of (and retirement at) age fifty-nine and one half, "neither of which events were subject to his control." *Ravdin Estate*, supra, 484 Pa. at 571, 400 A.2d at 596. In the case at bar, in contrast, the decedent's right to receive his contributions took effect upon his own volitional act of resignation. Hence, what the Court said in the similar factual context of *Dorsey Estate*, supra, is applicable here: "[I]n view of the depositor's right to withdraw in his lifetime the total amount of the fund credited to him . . . he had . . . substantial ownership of his entire share of the fund and accordingly . . . [it was] *his own property* to the extent that it represented contributions from his salary . . . ." *Dorsey Estate*, supra, 366 Pa. at 561–62, 79 A.2d at 261. [Emphasis in original.]

*peals and Review,* 480 Pa. 622, 391 A.2d 1059 (1978), and cases cited therein.[5]

The opinion of the court will, hence, *foster unnecessary litigation* because our courts will have to examine the practicalities which confronted each decedent in his lifetime.

5. I note in passing that no analogy is to be drawn between the 72 P.S. §§ 2485–101 *et seq.* treatment of proceeds from retirement plans and its exemption for life insurance benefits. 72 P.S. § 2485–316, the subject of this appeal, shows clearly that different treatment is to be accorded the two when it states that "proceeds of life insurance otherwise exempt under 72 P.S. § 2485–303 shall not be subject to inheritance tax because they are being paid under a pension, stock-bonus, profit-sharing or retirement annuity plan." 72 P.S. § 2485–303 is equally categorical in its provision, allowing exemption of insurance proceeds in all cases except where insurance is payable to the decedent's estate:

"All proceeds of insurance on the life of the decedent, unless payable to the estate of the decedent, are exempt from inheritance tax. Proceeds payable to an inter vivos or testamentary trustee or other beneficiary designated in the decedent's will or in an inter vivos instrument of transfer are exempt from inheritance tax within the meaning of this section."

Thus, one's right to borrow a part of the paid-up value of an insurance policy, or to use the policy as collateral, would not defeat the exemption even though these powers might well constitute a "substantial present economic benefit." Cf. *Dorsey Estate,* supra, 366 Pa. at 562, 79 A.2d at 261.